# **EXHIBIT B**

# EXHIBIT "A"

## SECURED PROMISSORY NOTE

# SECURED PROMISSORY NOTE

U.S. $ 3,450,000

This Promissory Note, hereinafter "Promissory Note," is made on 06/_1 0_/2021 by and between Arash Asante Bayrooti, an individual, hereinafter called "Lender," and Tony M. Diab, an individual, hereinafter called "Borrower," collectively referred to as "Parties."

As a condition to this Note and loan described herein, Borrower shall execute and deliver the Security Agreement, attached hereto as Exhibit "A".

1. Pursuant to a Stock Purchase Agreement, executed between the Parties on _June 10_, 2021, Borrower has become indebted to the Lender in the amount of $3,450,000. Accordingly, at the times and in the manner hereinafter stated, Borrower, promises to pay to the order of Lender, at such place, either within or without the State of California as Lender may from time to time designate in writing, in legal tender of the United States of America, the principal sum of three million four hundred and fifty thousand (U.S. $3,450,000) without interest upon the terms and conditions set forth below.

2. Payment of Principal and Term. The principal under this Promissory Note shall be due and payable by Borrower to Lender as follows:

2.1    Term, Payments of Principal.

ii. The sum of $460,000.00 to be delivered to Seller on or before July 1, 2021.

iii. The sum of $920,000.00 to be delivered to Seller on or before August 1, 2021.

iv. The sum of $920,000.00 to be delivered to Seller on or before September 1, 2021.

v. The sum of $1,150,000.00 to be delivered to Seller on or before October 1, 2021.

Should any of the above listed payments be paid after the due date set forth above for each applicable payment or should the payment due on the applicable date not be paid in full, the remaining balance owed shall begin to accrue interest at the rate of 10% per annum and be paid together with, and in addition to, the principal.

2.2    Grace Period. Lender shall provide Borrower a three (3) day grace period to make any and all payments due under this Promissory Note.

2.3    Setoff from Subsequent Collections  Should Lender collect any offsetting proceeds for this debt from other sources, Borrower shall be credited with net amounts of such collections.

3.  If any of the following events of default occur, this Promissory Note and any other obligations of the Borrower to the Lender, shall become due immediately, without demand or notice:

3.1.    The failure of the Borrower to pay the principal in full on or before the due date;

3.2.    The filing of bankruptcy proceedings involving the Borrower as a debtor;

3.3.    The application for the appointment of a receiver for the Borrower;

3.4.    The making of a general assignment for the benefit of the Borrower's creditors;

3.5.    The insolvency of the Borrower;

3.6.    The Borrower becomes insolvent or offers settlement to any creditors.

4.  In the event that Borrower defaults upon any obligation, agreement or promise contained herein, then the Lender shall have the right to reduce its claim to judgment, foreclose this Promissory Note, or otherwise enforce this agreement by any available lawful procedure.

5.  No waiver by Lender of any breach or default shall be deemed a waiver of any breach or default thereafter occurring and the taking of any action by the Lender shall not be deemed to be an election of that action, but rather the rights and privileges and options granted to the Lender under the terms of this Promissory Note shall be deemed cumulative, the one with the other and not alternatively.

6.  If this Promissory Note is placed in an attorney's hands for collection, or collected by a lawsuit or through a bankruptcy, or probate, or any other court, either before or after maturity, there shall be paid to the holder of this Promissory Note reasonable attorneys' fees, costs, and other expenses incurred by the holder in enforcing the terms of this Promissory Note.

746717.1

7. Failure to pay any part of the principal of this Promissory Note when due shall authorize the holder of this Promissory Note to declare as immediately due and payable the then-unpaid principal.

' 8. If any one or more of the provisions of this Promissory Note are determined to be unenforceable, in whole or in part, for any reason, the remaining provisions shall remain fully operative.

9. All payments of principal on this Promissory Note shall be paid in the legal currency of the United States.

10. No renewal or extension of this Promissory Note, delay in enforcing any right of the Lender under this Promissory Note, or assignment by Lender of this Promissory Note shall affect the liability or the obligations of the Borrower.

11. For purposes of executing this Promissory Note, a counterpart of this Agreement signed and then transmitted to the other party by facsimile machine or telecopier shall be treated as validly executed by the party transmitting it. The signature of such party shall be considered as an original signature, the document transmitted shall have the same binding, legal effect as an originally signed document, and no party may raise the use of a facsimile machine or the fact that any signature was transmitted through use of a facsimile machine as a defense to the enforcement of this Promissory Note. At the request of either party, any counterpart of this Promissory Note that is executed and transmitted by facsimile shall be re-executed by both parties in the original form.

12. This Promissory Note shall be governed by and construed in accordance with the laws of the State of California. Borrower and Lender hereby acknowledge, stipulate, consents and agrees to the jurisdiction of the Courts of the State of California, for the County of Los Angeles.

13. The terms of this Promissory Note apply to, inure to the benefit of, and bind all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. This Promissory Note may NOT be assigned by Borrower without first obtaining the written consent from the Lender.

14. If any provision or any word, term, clause or part of any provision of this Promissory Note shall be invalid for any reason, the remainder of this Promissory Note and the provisions thereof shall remain in full force and effect.

746717.1

Executed in the City of _Laguna Niguel_, State of _CA_

Dated: 6/10/2021

Tony M. Diab

746717.1

# EXHIBIT "A" TO THE SECURED PROMISSORY NOTE

## SECURITY AGREEMENT

# SECURITY AGREEMENT

SECURITY AGREEMENT, dated as of July __10__, 2021, between Tony M. Diab, an individual (the "Borrower"), and Arash Asante Bayrooti, an Individual (hereinafter, the "Lender") and B.A.T., Inc. (hereinafter "Company") collectively referred to as "Parties."

WHEREAS, the Borrower purchased the Company stock from Lender pursuant to a certain Stock Purchase Agreement, dated June 10, 2021

WHEREAS, the Borrower has entered into a Secured Promissory Note dated as of June 10, 2021 (as amended and in effect from time to time, the "Promissory Note"), with the Lender, pursuant to which the Lender, subject to the terms and conditions contained therein, has extended a loan to the Borrower in the amount of $3,450,000; and

WHEREAS, it is a condition precedent to the Lender's extending the loan to the Borrower under the Secured Promissory Note that the Borrower cause the Company execute and deliver to the Lender a security agreement in substantially the form hereof; and

WHEREAS, the Borrower, wishes to grant a security interest in favor of the Lender as herein provided;

NOW, THEREFORE, in consideration of the promises contained herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. **Definitions.** All capitalized terms used herein without definitions shall have the respective meanings provided therefor in the Promissory Note. The term "State", as used herein, means the State of California. All terms defined in the Uniform Commercial Code of the State and used herein shall have the same definitions herein as specified therein. However, if a term is defined in Article 9 of the Uniform Commercial Code of the State differently than in another Article of the Uniform Commercial Code of the State, the term has the meaning specified in Article 9. The term "electronic document" applies in the event that the 2003 revisions to Article 7, with amendments to Article 9, of the Uniform Commercial Code, in substantially the form approved by the American Law Institute and the National Conference of Commissioners on Uniform State Laws, are now or hereafter adopted and become effective in the State or in any other relevant jurisdiction. The term "Obligations", as used herein, means all of the indebtedness, obligations and liabilities of the Company to the Lender, individually or collectively, whether direct or indirect, joint or several, absolute or contingent, due or to become due, now existing or hereafter arising under or in respect of the Secured Promissory Note or this Agreement, and the term "Event of Default", as used herein, means the failure of the Company to pay or perform any of the Obligations as and when due to be paid or performed under the terms of the Secured Promissory Note.

2. <u>Grant of Security Interest</u>.

2.1 <u>Grant; Collateral Description.</u> The Borrower hereby grants to the Lender, to secure the payment and performance in full of all of the Obligations, a security interest in and pledges and assigns to the Lender, the following properties, assets and rights of the B.A.T., Inc. (hereinafter "Company"), owned in whole by the Borrower pursuant to the Stock Purchase Agreement signed between the Lender and Borrower on June 10, 2021, wherever located, whether now owned or hereafter acquired or arising, and all proceeds and products thereof (all of the same being hereinafter called the "Collateral"): all personal, intellectual and fixture property of every kind and nature including all goods (including inventory, equipment and any accessions thereto), instruments (including promissory notes), documents (including, if applicable, electronic documents), accounts (including any receivables), chattel paper (whether tangible or electronic), deposit accounts, letter-of-credit rights (whether or not the letter of credit is evidenced by a writing), commercial tort claims, securities and all other investment property, supporting obligations, any other contract rights or rights to the payment of money, insurance claims and proceeds, and all general intangibles (including but not limited to copyrightable works, patented inventions, trademarks, and trade secret)

3. <u>Authorization to File Financing Statements.</u> The Company hereby irrevocably authorizes the Lender at any time and from time to time to file in any filing office in any Uniform Commercial Code jurisdiction any initial financing statements and amendments thereto that (a) indicate the Collateral (i) as all assets of the Company or words of similar effect, regardless of whether any particular asset comprised in the Collateral falls within the scope of Article 9 of the Uniform Commercial Code of the State or such jurisdiction, or (ii) as being of an equal or lesser scope or with greater detail, and (b) provide any other information required by part 5 of Article 9 of the Uniform Commercial Code of the State or such other jurisdiction for the sufficiency or filing office acceptance of any financing statement or amendment, including (i) whether the Company is an organization, the type of organization and any organizational identification number issued to the Company and, (ii) in the case of a financing statement filed as a fixture filing or indicating Collateral as as-extracted collateral or timber to be cut, a sufficient description of real property to which the Collateral relates. The Company agrees to furnish any such information to the Lender promptly upon the Lender's request. The Company also ratifies its authorization for the Lender to have filed in any Uniform Commercial Code jurisdiction any like initial financing statements or amendments thereto if filed prior to the date hereof.

4. <u>Other Actions</u>. Further to insure the attachment, perfection and first priority of, and the ability of the Lender to enforce, the Lender's security interest in the Collateral, the Company agrees, in each case at the Company's expense, to take the following actions with respect to the following Collateral and without limitation on the Company's other obligations contained in this Agreement:

4.1. <u>Promissory Notes and Tangible Chattel Paper</u>. If the Company shall at any time hold or acquire any promissory notes or tangible chattel paper, the Company shall forthwith endorse, assign and deliver the same to the Lender, accompanied by such

instruments of transfer or assignment duly executed in blank as the Lender may from time to time specify.

**4.2. Deposit Accounts**. For each deposit account that the Company at any time opens or maintains, the Company shall, at the Lender's request and option, pursuant to an agreement in form and substance satisfactory to the Lender, either (a) cause the depositary bank to agree to comply, without further consent of the Lender, at any time with instructions from the Lender to such depositary bank directing the disposition of funds from time to time credited to such deposit account, or (b) arrange for the Lender to become the customer of the depositary bank with respect to the deposit account, with the Company being permitted, only with the consent of the Lender, to exercise rights to withdraw funds from such deposit account. The provisions of this paragraph shall not apply to (i) any deposit account for which the Company, the depositary bank and the Lender have entered into a cash collateral agreement specially negotiated among the Company, the depositary bank and the Lender for the specific purpose set forth therein, (ii) a deposit account for which the Lender is the depositary bank and is in automatic control, and (iii) any deposit accounts specially and exclusively used for payroll, payroll taxes and other employee wage and benefit payments to or for the benefit of the Company's salaried employees

**4.3. Investment Property**. If the Company shall at any time hold or acquire any certificated securities, the Company shall forthwith endorse, assign and deliver the same to the Lender, accompanied by such instruments of transfer or assignment duly executed in blank as the Lender may from time to time specify. If any securities now or hereafter acquired by the Company are uncertificated and are issued to the Company or its nominee directly by the issuer thereof, the Company shall immediately notify the Lender thereof and, at the Lender's request and option, pursuant to an agreement in form and substance satisfactory to the Lender, either (a) cause the issuer to agree to comply, without further consent of the Company or such nominee, at any time with instructions from the Lender as to such securities, or (b) arrange for the Lender to become the registered owner of the securities. If any securities, whether certificated or uncertificated, or other investment property now or hereafter acquired by the Company are held by the Company or its nominee through a securities intermediary or commodity intermediary, the Company shall immediately notify the Lender thereof and, at the Lender's request and option, pursuant to an agreement in form and substance satisfactory to the Lender, either (i) cause such securities intermediary or (as the case may be) commodity intermediary to agree to comply, in each case without further consent of the Company or such nominee, at any time with entitlement orders or other instructions from the Lender to such securities intermediary as to such securities or other investment property, or (as the case may be) to apply any value distributed on account of any commodity contract as directed by the Lender to such commodity intermediary, or (ii) in the case of financial assets or other investment property held through a securities intermediary, arrange for the Lender to become the entitlement holder with respect to such investment property, with the Company being permitted, only with the consent of the Lender, to exercise rights to withdraw or otherwise deal with such investment property. The Lender agrees with the Company that the Lender shall not give any such entitlement orders or instructions or directions to any such issuer, securities intermediary or commodity intermediary, and shall not withhold its consent to the exercise of any withdrawal or dealing rights by the Company, unless an Event of Default has

occurred and is continuing, or, after giving effect to any such investment and withdrawal rights not otherwise permitted by the Loan Documents, would occur. The provisions of this paragraph shall not apply to any financial assets credited to a securities account for which the Lender is the securities intermediary.

**4.4.    Collateral in the Possession of a Bailee**  If any Collateral is at any time in the possession of a bailee, the Company shall promptly notify the Lender thereof and, at the Lender's request and option, shall promptly obtain an acknowledgement from the bailee, in form and substance satisfactory to the Lender, that the bailee holds such Collateral for the benefit of the Lender and such bailee's agreement to comply, without further consent of the Company, at any time with instructions of the Lender as to such Collateral. The Lender agrees with the Company that the Lender shall not give any such instructions unless an Event of Default has occurred and is continuing or would occur after taking into account any action by the Company with respect to the bailee.

**4.6.    Letter-of-credit Rights.**  If the Company is at any time a beneficiary under a letter of credit now or hereafter, the Company shall promptly notify the Lender thereof and, at the request and option of the Lender, the Company shall, pursuant to an agreement in form and substance satisfactory to the Lender, either (i) arrange for the issuer and any confirmer or other nominated person of such letter of credit to consent to an assignment to the Lender of the proceeds of the letter of credit or (ii) arrange for the Lender to become the transferee beneficiary of the letter of credit, with the Lender agreeing, in each case, that the proceeds of the letter to credit are to be applied *as* provided in the Promissory Note.

**4.7  Commercial Tort Claims**.  If the Company shall at any time hold or acquire a commercial tort claim, the Company shall immediately notify the Lender in a writing signed by the Company of the particulars thereof and grant to the Lender in such writing a security interest therein and in the proceeds thereof, all upon the terms of this Agreement, with such writing to be in form and substance satisfactory to the Lender.

**4.8.    Other Actions as to any and all Collateral**.  The Company further agrees, upon request of the Lender and at the Lender's option, to take any and all other actions as the Lender may determine to be necessary or useful for the attachment, perfection and first priority of, and the ability of the Lender to enforce, the Lender's security interest in any and all of the Collateral, including (a) executing, delivering and, where appropriate, filing financing statements and amendments relating thereto under the Uniform Commercial Code of any relevant jurisdiction, to the extent, if any, that the Company's signature thereon is required therefor, (b) causing the Lender's name to be noted as secured party on any certificate of title for a titled good if such notation is a condition to attachment, perfection or priority of, or ability of the Lender to enforce, the Lender's security interest in such Collateral, (c) complying with any provision of any statute, regulation or treaty of the United States as to any Collateral if compliance with such provision is a condition to attachment, perfection or priority of, or ability of the Lender to enforce, the Lender's security interest in such Collateral, (d) obtaining governmental and other third party waivers, consents and approvals in form and substance satisfactory to the Lender, including any consent of any licensor, lessor or other person obligated on Collateral and any party or parties whose consent is required for the security interest of the Lender to attach, (e)

obtaining waivers from mortgagees and landlords in form and substance satisfactory to the Lender and (f) taking all actions under any earlier versions of the Uniform Commercial Code or under any other law, as reasonably determined by the Lender to be applicable in any relevant Uniform Commercial Code or other jurisdiction, including any foreign jurisdiction.

5. **Relation to Other Security Documents.** The provisions of this Agreement supplement the provisions of any real estate mortgage or deed of trust granted by the Company to the Lender and which secures the payment or performance of any of the Obligations. Nothing contained in any such real estate mortgage or deed of trust shall derogate from any of the rights or remedies of the Lender hereunder.

6. **Representations and Warranties Concerning Company's Legal Status.** The Company has previously delivered to the Lender a certificate signed by the Company and entitled "Perfection Certificate" (the "Perfection Certificate"). The Company represents and warrants to the Lender as follows: (a) the Company's exact legal name is that indicated on the Perfection Certificate and on the signature page hereof, (b) the Company is an organization of the type, and is organized in the jurisdiction, set forth in the Perfection Certificate, (c) the Perfection Certificate accurately sets forth the Company's organizational identification number or accurately states that the Company has none, (d) the Perfection Certificate accurately sets forth the Company's place of business or, if more than one, its chief executive office, as well as the Company's mailing address, if different, (e) all other information set forth on the Perfection Certificate pertaining to the Company is accurate and complete and (f) there has been no change in any of such information since the date on which the Perfection Certificate was signed by the Company.

7. **Covenants Concerning Company's Legal Status.** The Company covenants with the Lender as follows: (a) without providing at least 30 days prior written notice to the Lender, the Company will not change its name, its place of business or, if more than one, chief executive office, or its mailing address or organizational identification number if it has one, (b) if the Company does not have an organizational identification number and later obtains one, the Company will forthwith notify the Lender of such organizational identification number, and (c) the Company will not change its type of organization, jurisdiction of organization or other legal structure.

8. **Representations and Warranties Concerning Collateral, Etc.** The Company further represents and warrants to the Lender as follows: (a) the Company is the owner of *or* has other rights in or power to transfer the Collateral, free from any right or claim of any person or any adverse lien, security interest or other encumbrance, except for the security interest created by this Agreement (b) none of the Collateral constitutes, or is the proceeds of, "farm products" as defined in §9-102(a)(34) of the Uniform Commercial Code of the State, (c) none of the account debtors or other persons obligated on any of the Collateral is a governmental authority covered by the Federal Assignment of Claims Act or like federal, state or local statute or rule in respect of such Collateral, (d) the Company holds no commercial tort claim except as indicated on the Perfection Certificate, and (e) the Company has at all times operated its business in compliance with all applicable provisions of the federal Fair Labor Standards Act, as amended, and with all applicable provisions of federal, state and local statutes and ordinances dealing with the control, shipment, storage or disposal of hazardous materials or substances, (f) all other information set forth on the Perfection

Certificate pertaining to the Collateral is accurate and complete, and (g) there has been no change in any of such information since the date on which the Perfection Certificate was signed by the Company.

**9. Covenants Concerning Collateral, Etc.** The Company further covenants with the Lender as follows: (a) the Collateral, to the extent not delivered to the Lender pursuant to §4, will be kept at those locations listed on the Perfection Certificate and the Company will not remove the Collateral from such locations, without providing at least 30 days prior written notice to the Lender, (b) except for the security interest herein granted, the Company shall be the owner of the Collateral free from any right or claim of any other person or any lien, security interest or other encumbrance, and the Company shall defend the same against all claims and demands of all persons at any time claiming the same or any interests therein adverse to the Lender, (c) the Company shall not pledge, mortgage or create, or suffer to exist any right of any person in or claim by any person to the Collateral, or any security interest, lien or other encumbrance in the Collateral in favor of any person, or become bound (as provided in Section 9-203(d) of the Uniform Commercial Code of the State or any other relevant jurisdiction or otherwise) by a security agreement in favor of any person as secured party, other than the Lender, (d) the Company will keep the Collateral in good order and repair and will not use the same in violation of law or any policy of insurance thereon, (e) the Company will permit the Lender, or its designee, to inspect the Collateral at any reasonable time, wherever located, (f) the Company will pay promptly when due all taxes, assessments, governmental charges and levies upon the Collateral or incurred in connection with the use or operation of such Collateral or incurred in connection with this Agreement, (g) the Company will continue to operate its business in compliance with all applicable provisions of the federal Fair Labor Standards Act, as amended, and with all applicable provisions of federal, state and local statutes and ordinances dealing with the control, shipment, storage or disposal of hazardous materials or substances, and (h) the Company will not sell or otherwise dispose, or offer to sell or otherwise dispose, of the Collateral or any interest therein except for *(i)* sales of inventory in the ordinary course of business.

**10. Collateral Protection Expenses; Preservation of Collateral.**

    **10.1. Expenses Incurred by Lender.** In the Lender's discretion the Lender may discharge taxes and other encumbrances at any time levied or placed on any of the Collateral, make repairs thereto and pay any necessary filing fees or insurance premiums, in each case to the extent that the Company fails to do so. The Company agrees to reimburse the Lender on demand for all expenditures so made. The Lender shall have no obligation to the Company to make any such expenditures, nor shall the making thereof be construed as a waiver or cure any Default or Event of Default.

    **10.2. Lender's Obligations and Duties.** Anything herein to the contrary notwithstanding, the Company shall remain obligated and liable under each contract or agreement comprised in the Collateral to be observed or performed by the Company thereunder. The Lender shall not have any obligation or liability under any such contract or agreement by reason of or arising out of this Agreement or the receipt by the Lender of any payment relating to any of the Collateral, nor shall the Lender be obligated in any manner to perform any of the obligations of the Company under or pursuant to any such contract or agreement, to make inquiry as to the nature or sufficiency of any payment

received by the Lender in respect of the Collateral or as to the sufficiency of any performance by any party under any such contract or agreement, to present or file any claim, to take any action to enforce any performance or to collect the payment of any amounts which may have been assigned to the Lender or to which the Lender may be entitled at any time or times. The Lender's sole duty with respect to the custody, safe keeping and physical preservation of the Collateral in its possession, under §9-207 of the Uniform Commercial Code of the State or otherwise, shall be to deal with such Collateral in the same manner as the Lender deals with similar property for its own account.

**11. Securities and Deposits.** The Lender may at any, at its option, transfer to itself or any nominee any securities constituting Collateral, receive any income thereon and hold such income as additional Collateral or apply it to the Obligations. Whether or not any Obligations are due, the Lender may demand, sue for, collect, or make any settlement or compromise which it deems desirable with respect to the Collateral. Regardless of the adequacy of Collateral or any other security for the Obligations, any deposits or other sums at any time credited by or due from the Lender to the Company may at any time be applied to or set off against any of the Obligations.

**12. Notification to Account Debtors and Other Persons Obligated on Collateral.** If an Event of Default shall have occurred and be continuing, the Company shall, at the request and option of the Lender, notify account debtors and other persons obligated on any of the Collateral of the security interest of the Lender in any account, chattel paper, general intangible, instrument or other Collateral and that payment thereof is to be made directly to the Lender or to any financial institution designated by the Lender as the Lender's agent therefor, and the Lender may itself, if a Default or an Event of Default shall have occurred and be continuing, without notice to or demand upon the Company, so notify account debtors and other persons obligated on Collateral. After the making of such a request or the giving of any such notification, the Company shall hold any proceeds of collection of accounts, chattel paper, general intangibles, instruments and other Collateral received by the Company as trustee for the Lender without commingling the same with other funds of the Company and shall turn the same over to the Lender in the identical form received, together with any necessary endorsements or assignments. The Lender shall apply the proceeds of collection of accounts, chattel paper, general intangibles, instruments and other Collateral received by the Lender to the Obligations, such proceeds to be immediately credited after final payment in cash or other immediately available funds of the items giving rise to them.

**13. Power of Attorney.**

**13.1. Appointment and Powers of Lender.** The Company hereby irrevocably constitutes and appoints the Lender and any officer or agent thereof, with full power of substitution, as its true and lawful attorneys-in-fact with full irrevocable power and authority in the place and stead of the Company or in the Lender's own name, for the purpose of carrying out the terms of this Agreement, to take any and all appropriate action and to execute any and all documents and instruments that may be necessary or useful to accomplish the purposes of this Agreement and, without limiting the generality of the foregoing, hereby gives said attorneys the power and right, on behalf of the Company, without notice to or assent by the Company, to do the following:

(a)     upon the occurrence and during the continuance of an Event of Default, generally to sell, transfer, pledge, make any agreement with respect to or otherwise dispose of or deal with any of the Collateral in such manner as is consistent with the Uniform Commercial Code of the State or any other relevant jurisdiction and as fully and completely as though the Lender were the absolute owner thereof for all purposes, and to do, at the Company's expense, at any time, or from time to time, all acts and things which the Lender deems necessary or useful to protect, preserve or realize upon the Collateral and the Lender's security interest therein, in order to effect the intent of this Agreement, all no less fully and effectively as the Company might do, including, without limitation, (i) the filing and prosecuting of registration and transfer applications with the appropriate federal, state or local agencies or authorities with respect to trademarks, copyrights and patentable inventions and processes, (ii) upon written notice to the Company, the exercise of voting rights with respect to voting securities, which rights may be exercised, if the Lender so elects, with a view to causing the liquidation of assets of the issuer of any such securities and (iii) the execution, delivery and recording, in connection with any sale or other disposition of any Collateral, of the endorsements, assignments or other instruments of conveyance or transfer with respect to such Collateral; and

(b)     to the extent that the Company's authorization given in §3 is not sufficient, to file such financing statements with respect hereto, with or without the Company's signature, or a photocopy of this Agreement in substitution for a financing statement, as the Lender may deem appropriate and to execute in the Company's name such financing statements and amendments thereto and continuation statements which may require the Company's signature.

**13.2. <u>Ratification by Company</u>.** To the extent permitted by law, the Company hereby ratifies all that said attorneys shall lawfully do or cause to be done by virtue hereof. This power of attorney is a power coupled with an interest and is irrevocable.

**13.3. <u>No Duty on Lender</u>.** The powers conferred on the Lender hereunder are solely to protect its interests in the Collateral and shall not impose any duty upon it to exercise any such powers. The Lender shall be accountable only for the amounts that it actually receives as a result of the exercise of such powers, and neither it nor any of its officers, directors, employees or agents shall be responsible to the Company for any act or failure to act, except for the Lender's own gross negligence or willful misconduct.

**14. <u>Rights and Remedies</u>.** If an Event of Default shall have occurred and be continuing, the Lender, without any other notice to or demand upon the Company, shall have in any jurisdiction in which enforcement hereof is sought, in addition to all other rights and remedies, the rights and remedies of a secured party under the Uniform Commercial Code of the State or any other relevant jurisdiction and any additional rights and remedies as may be provided to a secured party in any jurisdiction in which Collateral is located, including, without limitation, the right to take possession of the Collateral, and for that purpose the Lender may, so far as the Company can give authority therefor, enter upon any premises on which the Collateral may be situated and remove the same therefrom. The Lender may in its discretion require the Company to assemble all or any

ollateral at such location or locations within the jurisdiction(s) of the Company's
ice(s) or at such other locations as the Lender may reasonably designate. Unless the
perishable or threatens to decline speedily in value or is of a type customarily sold on
market, the Lender shall give to the Company at least five Business Days prior written
time and place of any public sale of Collateral or of the time after which any private
her intended disposition is to be made. The Company hereby acknowledges that five
ys prior written notice of such sale or sales shall be reasonable notice. In addition, the
ives any and all rights that it may have to a judicial hearing in advance of the
of any of the Lender's rights and remedies hereunder, including, without limitation,
wing an Event of Default to take immediate possession of the Collateral and to
hts and remedies with respect thereto.

tandards for Exercising Rights and Remedies. To the extent that applicable law
es on the Lender to exercise remedies in a commercially reasonable manner, the
nowledges and agrees that it is not commercially unreasonable for the Lender (a) to
expenses reasonably deemed significant by the Lender to prepare Collateral for
otherwise to fail to complete raw material or work in process into finished goods or
products for disposition, (b) to fail to obtain third party consents for access to
be disposed of, or to obtain or, if not required by other law, to fail to obtain
or third party consents for the collection or disposition of Collateral to be collected
, (c) to fail to exercise collection remedies against account debtors or other persons
ollateral or to fail to remove liens or encumbrances on or any adverse claims against
to exercise collection remedies against account debtors and other persons obligated
irectly or through the use of collection agencies and other collection specialists, (e)
positions of Collateral through publications or media of general circulation, whether
ateral is of a specialized nature, (f) to contact other persons, whether or not in the
as the Company, for expressions of interest in acquiring all or any portion of the
o hire one or more professional auctioneers to assist in the disposition of Collateral,
the collateral is of a specialized nature, (h) to dispose of Collateral by utilizing
at provide for the auction of assets of the types included in the Collateral or that
able capability of doing so, or that match buyers and sellers of assets, (i) to dispose
olesale rather than retail markets, (j) to disclaim disposition warranties, (k) to
nce or credit enhancements to insure the Lender against risks of loss, collection or
Collateral or to provide to the Lender a guaranteed return from the collection or
Collateral, or (l) to the extent deemed appropriate by the Lender, to obtain
r brokers, investment bankers, consultants and other professionals to assist the
llection or disposition of any of the Collateral. The Company acknowledges that
his §15 is to provide non-exhaustive indications of what actions or omissions by
d fulfill the Lender's duties under the Uniform Commercial Code of the State or
t jurisdiction in the Lender's exercise of remedies against the Collateral and that
missions by the Lender shall not be deemed to fail to fulfill such duties solely on
being indicated in this §15. Without limitation upon the foregoing, nothing
15 shall be construed to grant any rights to the Company or to impose any duties
would not have been granted or imposed by this Agreement or by applicable
of this §15.

16. **No Waiver by Lender, etc.** The Lender shall not be deemed to have waived any of its rights and remedies in respect of the Obligations or the Collateral unless such waiver shall be in writing and signed by the Lender. No delay or omission on the part of the Lender in exercising any right or remedy shall operate as a waiver of such right or remedy or any other right or remedy. A waiver on any one occasion shall not be construed as a bar to or waiver of any right or remedy on any future occasion. All rights and remedies of the Lender with respect to the Obligations or the Collateral, whether evidenced hereby or by any other instrument or papers, shall be cumulative and may be exercised singularly, alternatively, successively or concurrently at such time or at such times as the Lender deems expedient.

17. **Suretyship Waivers by Company.** The Company waives demand, notice, protest, notice of acceptance of this Agreement, notice of loans made, credit extended, Collateral received or delivered or other action taken in reliance hereon and all other demands and notices of any description. With respect to both the Obligations and the Collateral, the Company assents to any extension or postponement of the time of payment or any other indulgence, to any substitution, exchange or release of or failure to perfect any security interest in any Collateral, to the addition or release of any party or person primarily or secondarily liable, to the acceptance of partial payment thereon and the settlement, compromising or adjusting of any thereof, all in such manner and at such time or times as the Lender may deem advisable. The Lender shall have no duty as to the collection or protection of the Collateral or any income therefrom, the preservation of rights against prior parties, or the preservation of any rights pertaining thereto beyond the safe custody thereof as set forth in §10.2. The Company further waives any and all other suretyship defenses.

18. **Marshaling.** The Lender shall not be required to marshal any present or future collateral security (including but not limited to the Collateral) for, or other assurances of payment of, the Obligations or any of them or to resort to such collateral security or other assurances of payment in any particular order, and all of its rights and remedies hereunder and in respect of such collateral security and other assurances of payment shall be cumulative and in addition to all other rights and remedies, however existing or arising. To the extent that it lawfully may, the Company hereby agrees that it will not invoke any law relating to the marshaling of collateral which might cause delay in or impede the enforcement of the Lender's rights and remedies under this Agreement or under any other instrument creating or evidencing any of the Obligations or under which any of the Obligations is outstanding or by which any of the Obligations is secured or payment thereof is otherwise assured, and, to the extent that it lawfully may, the Company hereby irrevocably waives the benefits of all such laws.

19. **Proceeds of Dispositions; Expenses.** The Company shall pay to the Lender on demand any and all expenses, including reasonable attorneys' fees and disbursements, incurred or paid by the Lender in protecting, preserving or enforcing the Lender's rights and remedies under or in respect of any of the Obligations or any of the Collateral. After deducting all of said expenses, the residue of any proceeds of collection or sale or other disposition of Collateral shall, to the extent actually received in cash, be applied to the payment of the Obligations in such order or preference as the Lender may determine, proper allowance and provision being made for any Obligations not then due. Upon the final payment and satisfaction in full of all of the Obligations and after making any payments required by Sections 9-608(a)(1)(C) or 9-615(a)(3) of the Uniform Commercial Code of the State, any excess shall be returned to the Company. In the absence of

final payment and satisfaction in full of all of the Obligations, the Company shall remain liable for any deficiency.

**20. Overdue Amounts.** Until paid, all amounts due and payable by the Company hereunder shall be a debt secured by the Collateral and shall bear, whether before or after judgment, interest at the rate of interest for overdue principal set forth in the Promissory Note.

**21. Governing Law; Consent to Jurisdiction.** THIS AGREEMENT SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE. The Company agrees that any action or claim arising out of any dispute in connection with this Agreement, any rights or obligations hereunder or the performance or enforcement of such rights or obligations may be brought in the courts of the State or any federal court sitting therein and consents to the non-exclusive jurisdiction of such court and to service of process in any such suit being made upon the Company by mail at the address, specified of the Promissory Note. The Company hereby waives any objection that it may now or hereafter have to the venue of any such suit or any such court or that such suit is brought in an inconvenient court.

**22. Miscellaneous.** The headings of each section of this Agreement are for convenience only and shall not define or limit the provisions thereof. This Agreement and all rights and obligations hereunder shall be binding upon the Company and its successors and assigns, and shall inure to the benefit of the Lender and its successors and assigns. If any term of this Agreement shall be held to be invalid, illegal or unenforceable, the validity of all other terms hereof shall in no way be affected thereby, and this Agreement shall be construed and be enforceable as if such invalid, illegal or unenforceable term had not been included herein. The Company acknowledges receipt of a copy of this Agreement.

IN WITNESS WHEREOF, intending to be legally bound, the Borrower and Company has caused this Agreement to be duly executed as of the date first above written.

By:_____
Name: Tony Dinh
Title: Principal

By:_____
Name:
Title:

746717.1

arising out of or relating to the Guaranty, the Stock Purchase Agreement, Promissory Note.

Releasor understands that it may later discover Claims or facts that may be from, or in addition to, those that it or any other Releasor now knows or believes regarding the subject matter of the release contained in this Section, and which, if the time of signing this Guaranty, may have materially affected this Release and such party's decision to enter into it and grant the release contained in this Nevertheless, the Releasors intend to fully, finally, and forever settle and release that now exist, may exist, or previously existed, as set out in the release in this Section, whether known or unknown, foreseen or unforeseen, or or unsuspected, and the release given herein is and will remain in effect as a release, notwithstanding the discovery or existence of such additional or facts. The Releasors hereby waive any right or Claim that might arise as a result different or additional Claims or facts. The Releasors have been made aware of, stand, the provisions of California Civil Code Section 1542 ("Section 1542"), provides: **"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR TLEMENT WITH THE DEBTOR."** The Releasors expressly, knowingly, onally waive any and all rights, benefits, and protections of Section 1542 and state or federal statute or common law principle limiting the scope of a ase.

ers; Acknowledgments. Guarantor further acknowledges and agrees as

antor hereby unconditionally and irrevocably waives any right to revoke t acknowledges that this Guaranty is continuing in nature and applies to a ting and future Obligations, until the complete, irrevocable and indefeas satisfaction in full of the Obligations.

Guaranty is a guaranty of payment and performance and not of collection shall not be obligated to enforce or exhaust its remedies against Obligor o derlying Agreement before proceeding to enforce this Guaranty.

Guaranty is a direct guaranty and independent of the obligations of Obligor derlying Agreement. Beneficiary may resort to Guarantor for payment and of the Obligations whether or not Beneficiary shall have resorted to any for or shall have proceeded against Obligor or any other guarantors with Obligations. Beneficiary may, at Beneficiary's option, proceed against Obligor, jointly and severally, or against Guarantor only without having ment against Obligor.

Guarantor hereby unconditionally and irrevocably waives promptness, diligence, notice of acceptance, presentment, demand for performance, notice of non-performance, default, acceleration, protest or dishonor and any other notice with respect to any of the Obligations and this Guaranty and any requirement that Beneficiary protect, secure, perfect or insure any lien or any property subject thereto.

Notwithstanding anything contained herein to the contrary, the Obligations of Guarantor shall be limited to the maximum amount so as to not constitute a fraudulent transfer or conveyance for purposes of the United States Bankruptcy Code or any applicable state law or otherwise to the extent applicable to this Guaranty and the Obligations of Guarantor hereunder.

Guarantor agrees that its guaranty hereunder shall continue to be effective or be reinstated, as the case may be, if at any time all or part of any payment of any Obligation is voided, rescinded or recovered or must otherwise be returned by Beneficiary upon the insolvency, bankruptcy or reorganization of Obligor.

Subrogation. Guarantor waives and shall not exercise any rights that it may acquire by way of subrogation, contribution, reimbursement or indemnification for payments made under this Guaranty until all Obligations shall have been indefeasibly paid and discharged in full.

Representations and Warranties. To induce Beneficiary to enter into the Underlying Agreement, Guarantor represents and warrants that: (a) Guarantor is a duly organized and validly existing Professional Corporation in good standing under the laws of California; (b) this Guaranty constitutes Guarantor's valid and legally binding agreement in accordance with its terms; (c) the execution, delivery and performance of this Guaranty have been duly authorized by all necessary action and will not violate any order, judgment or decree to which Guarantor or any of its assets may be subject; (d) Guarantor is currently solvent and will not be rendered insolvent by providing this Guaranty; and (e) the signatory of this Guaranty is duly authorized with the corporate power and authority to bind Guarantor to the terms of this Guaranty.

Notices. All notices, requests, consents, demands and other communications hereunder (each, a "Notice") shall be in writing and delivered to the parties at the addresses set forth herein or to such other address as may be designated by the receiving party in a Notice given in accordance with this section. All Notices shall be delivered by personal delivery, nationally recognized overnight courier, facsimile or email or certified or registered mail (return receipt requested, postage prepaid). Except as otherwise provided in this Guaranty, a Notice is effective only (a) with written confirmation of delivery or transmission; (b) upon receipt of the receiving party; and (c) if the party giving the Notice has complied with the requirements of this section.

Assignment. This Guaranty shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns; provided, however, that Guarantor may not,

746717.1

without the prior written consent of Beneficiary, assign any of its rights, powers or obligations hereunder. Any attempted assignment in violation of this section shall be null and void.

Governing Law; Service of Process. THIS GUARANTY SHALL BE GOVERNED BY AND CONSTRUED UNDER THE LAWS OF THE STATE OF CALIFORNIA, WITHOUT REFERENCE TO ANY CHOICE OF LAW DOCTRINE. EACH PARTY IRREVOCABLY CONSENTS TO SERVICE OF PROCESS IN THE MANNER PROVIDED FOR NOTICES IN SECTION 7 HEREOF AND AGREES THAT NOTHING HEREIN SHALL AFFECT THE RIGHT OF ANY PARTY HERETO TO SERVE PROCESS IN ANY MANNER PERMITTED BY APPLICABLE LAW.

Dispute Resolution. The parties agree that any and all disputes, claims or controversies arising out of or relating to this Guaranty shall be submitted for mediation, and if the matter is not resolved through mediation, then it shall be submitted, and binding arbitration as set forth below.

Either party may commence mediation by providing to the other party a written request for mediation, setting forth the subject of the dispute and the relief requested. The parties will cooperate with one another in selecting a mediator and in scheduling the mediation proceedings. Should the parties be unable to select a mediator, each party will select a mediator and the two mediators, in turn, will select a mediator for the parties. The parties agree that they will participate in the mediation in good faith and that they will share equally in its costs. All offers, promises, conduct and statements, whether oral or written, made in the course of the mediation by any of the parties, their agents, employees, experts and attorneys, and by the mediator are confidential, privileged and inadmissible for any purpose, including impeachment, in any arbitration or other proceeding involving the parties, provided that evidence that is otherwise admissible or discoverable shall not be rendered inadmissible or non-discoverable as a result of its use in the mediation.

Either party may initiate arbitration with respect to the matters submitted to mediation by filing a written demand for arbitration at any time following the initial mediation session or at any time following 45 days from the date of filing the written request for mediation, whichever occurs first ("**Earliest Initiation Date**"). Should the parties be unable to find a mutually agreeable arbitrator, the mediator shall select one for them. All arbitration proceedings shall be in accordance with the rules of the American Arbitration Association. Any arbitration hereunder shall take place in Los Angeles, California. The mediation may continue after the commencement of arbitration if the parties so desire.

At no time prior to the Earliest Initiation Date shall either side initiate any arbitration related to this Guaranty except to pursue a provisional remedy that is authorized by law or by agreement of the parties. Notwithstanding anything to the contrary set forth herein, it is agreed and understood that monetary damages would not adequately compensate an injured party hereto for the breach of this Guaranty by any other party hereto, that this Guaranty shall be specifically

746717.1

enforceable, and that any breach or threatened breach of this Guaranty shall be the proper subject of a temporary or permanent injunction or restraining order. Further, each party hereto waives any claim or defense that there is an adequate remedy at law for such breach or threatened breach. Any such request for specific enforcement may be brought in any court of competent jurisdiction in Los Angeles, California. The dispute resolution provisions of this Guaranty shall be the exclusive manner of dispute resolutions between the parties.

Waiver of Jury Trial. EACH PARTY HEREBY IRREVOCABLY WAIVES ANY AND ALL RIGHTS TO TRIAL BY JURY WITH RESPECT TO ANY LEGAL PROCEEDING ARISING OUT OF OR RELATING TO THIS GUARANTY OR ANY OF THE OBLIGATIONS HEREUNDER.

Cumulative Rights. Each right, remedy and power hereby granted to Beneficiary or allowed it by applicable law or other agreement shall be cumulative and not exclusive of any other, and may be exercised by Beneficiary at any time or from time to time.

Severability. If any provision of this Guaranty is to any extent determined by final decision of a court of competent jurisdiction to be unenforceable, the remainder of this Guaranty shall not be affected thereby, and each provision of this Guaranty shall be valid and enforceable to the fullest extent permitted by law.

Entire Agreement; Amendments; Headings; Effectiveness. This Guaranty constitutes the sole and entire agreement of Guarantor and Beneficiary with respect to the subject matter hereof and supersedes all previous agreements or understandings, oral or written, with respect to such subject matter. No amendment or waiver of any provision of this Guaranty shall be valid and binding unless it is in writing and signed, in the case of an amendment, by both parties, or in the case of a waiver, by the party against which the waiver is to be effective. Section headings are for convenience of reference only and shall not define, modify, expand or limit any of the terms of this Guaranty. Delivery of this Guaranty by facsimile or in electronic (i.e., pdf or tif) format shall be effective as delivery of a manually executed original of this Guaranty.

**[SIGNATURE PAGE FOLLOWS]**

746717.1

IN WITNESS WHEREOF, Guarantor has executed this Guaranty as of the day and year first above written.

GUARANTOR:

The Litigation Practice Group PC:

By: _____

Name: _DANIEL S. MARCH_

Title: _SHAREHOLDER / OWNER_

746717.1