Christopher B. Ghio (State Bar No. 259094)
Christopher Celentino (State Bar No. 131688)
Yosina M. Lissebeck (State Bar No. 201654)
**DINSMORE & SHOHL LLP**
655 West Broadway, Suite 800
San Diego, CA 92101
Telephone: 619.400.0500
Facsimile: 619.400.0501
christopher.ghio@dinsmore.com
christopher.celentino@dinsmore.com
yosina.lissebeck@dinsmore.com

Matthew J. Stockl (State Bar No. 329366)
**DINSMORE & SHOHL LLP**
550 South Hope Street, Suite 1765
Los Angeles, CA 90071
Telephone: 213.335.7737
Facsimile: 213.335.7740
matthew.stockl@dinsmore.com

Special Counsel to Richard A. Marshack, Chapter 11 Trustee

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION**

| | |
|---|---|
| In re:<br><br>THE LITIGATION PRACTICE GROUP P.C.,<br><br>Debtor.<br><br>―――――――――――――――――<br><br>RICHARD A. MARSHACK,<br><br>Plaintiff,<br><br>v.<br><br>ARASH ASANTE BAYROOTI, a California resident,<br><br>Defendant. | Case No.: 8:23-bk-10571-SC<br><br>Adv. Proc. No. 8:24-ap-01068-SC<br><br>Chapter 11<br><br>**DECLARATION OF RICHARD A. MARSHACK IN SUPPORT OF PLAINTIFF'S EMERGENCY MOTION FOR APPLICATION FOR A RIGHT TO ATTACH ORDER AND ISSUANCE OF WRIT OF ATTACHMENT OR, ALTERNATIVELY, FOR A TEMPORARY PROTECTIVE ORDER PENDING A NOTICED HEARING [LBR 9075-1a]**<br><br>[Filed Concurrently with Plaintiff's Emergency Motion for Application for a Right to Attach Order and Issuance of Writ of Attachment or, Alternatively, for a Temporary Protective Order Pending a Noticed Hearing; Memorandum of Points and Authorities in Support Thereof]<br><br>Date:    August 13, 2024<br>Time:    1:30 p.m.<br>Judge:   Hon. Scott C. Clarkson<br>Place:   Courtroom 5C<br>           411 West Fourth Street<br>           Santa Ana, California 92701 |

1    I, Richard A. Marshack, declare as follows:

2    1.    I am the duly appointed Chapter 11 Trustee for the bankruptcy estate ("Estate") of the debtor, The Litigation Practice Group P.C. ("Debtor"), and the plaintiff in the above-captioned adversary proceeding. I am also a founding member of the law firm of Marshack Hays Wood LLP, and I am duly admitted to practice before this Court. I make this declaration in support of *Plaintiff's Emergency Motion for Application for a Right to Attach Order and Issuance of Writ of Attachment* (the "Application"). Unless stated otherwise, I have personal knowledge of the matters set forth herein, and if called upon to testify, I could and would testify competently thereto.

2.    On May 8, 2023, I accepted my appointment as the Chapter 11 Trustee for the Estate. After my appointment, I analyzed the state of Debtor's business, acted to stop further losses and maximize value of the business by obtaining a temporary restraining order and preliminary injunction against insiders, affiliates and other parties involved with Debtor, and conducted the sale of Debtor's assets, among other things. I continue to serve in this capacity at this time.

3.    The Court may take judicial notice of the following:

   a.    On March 20, 2023 ("Petition Date"), Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, commencing the above-captioned bankruptcy case (the "Bankruptcy Case").

   b.    The Office of the United States Trustee ("UST") filed its *Motion by United States Trustee to Dismiss or Convert Case Pursuant to 11 U.S.C. § 1112(b)* [Bankr. Docket No. 21] and creditors Debt Validation Fund II, LLC; MC DVI Fund 1, LLC; and MC DVI Fund 2, LLC filed the *Motion by DVF and MC DVI to Dismiss Chapter 11 Case Pursuant to 11 U.S.C. §§ 105, 305, 349, & 1112, or in the Alternative Convert this Case to Chapter 7 or Appoint a Trustee* [Bankr. Docket No. 44].

   c.    On May 4, 2023, the Court entered its *Order Directing United States Trustee to Appoint Chapter 11 Trustee* [Bankr. Docket No. 58].

///

1         d.        The Court approved my appointment in its *Order Approving the U.S. Trustee's Application for the Appointment of a Chapter 11 Trustee* [Docket No. 65].

        e.        All docket entries in the Bankruptcy Case.

        f.        All docket entries in the adversary proceeding captioned *OHP-CDR, LP v. Marshack et al.*, pending as Adv. No. 8:23-ap-01098 before the Court.

        g.        All docket entries in the adversary proceeding captioned *Marshack v. Bridge Funding Cap, LLC D/B/A/ Fundura Capital et al.*, pending as Adv. No. 8:24-ap-01011 before the Court.

        h.        All docket entries in the adversary proceeding captioned *Marshack v. Clearcube LLC dba Litigation Practice Center*, pending as Adv. No. 8:24-ap-01002 before the Court.

4.      On April 19, 2024, I filed the *Complaint for (1) Avoidance, Recovery, and Preservation of Fraudulent Transfer(s) and/or; (2) Avoidance, Recovery, and Preservation of Preferential Transfer(s)*, and, on July 12, 2024, I filed the *First Amended Complaint for (1) Avoidance, Recovery, and Preservation of Fraudulent Transfer(s); (2) Avoidance, Recovery, and Preservation of 4-year Constructive Voidable Transfers; and/or (3) Avoidance, Recovery, and Preservation of Preferential Transfer(s)* (as amended, the "Complaint").

5.      The Complaint seeks to avoid and recover LPG's Payment to Mr. Bayrooti, which was made pursuant to LPG's Guaranty of Mr. Diab's obligations to Mr. Bayrooti under the Agreement.

6.      I am informed and believe and thereon allege, that the Agreement's stated purchase price for the Stock was $7,130,000.00 to be paid in a lump sum amount of $3,680,000.00 at closing followed by monthly payments thereafter until the purchase price was paid in full.

7.      I am informed and believe and thereon allege, that Mr. Diab executed a promissory note and accompanying security agreement (collectively "Note") to document the amount remaining owed under the Agreement.

/ / /

3

8. I am informed and believe and thereon allege, that while the consideration was to be paid over time, Mr. Bayrooti delivered the Stock in Coast to Mr. Diab at closing upon delivery of a lump sum payment.

9. I am informed and believe and thereon allege, that despite the Agreement being between Mr. Bayrooti and Mr. Diab, the Agreement required that LPG guaranty Mr. Diab's obligations to Mr. Bayrooti under the Agreement pursuant to the Guaranty.

10. I am informed and believe and thereon allege, that the Agreement was modified to reduce the initial lump sum payment from $3,680,000.00 to $2,000,000.00 with the remaining $5,130,000.00 to be paid in installments thereafter.

11. An addendum to the Agreement documenting this change may have been drafted, but I do not know if this addendum was ever executed.

12. I am informed and believe and thereon allege, that the parties performed under the Agreement on or about June 10, 2021, with Mr. Bayrooti delivering the Stock to Mr. Diab and Mr. Bayrooti receiving the reduced lump sum payment of $2,000,000.00.

13. On or around September 6, 2022, LPG received a wire transfer from Sunflower Bank in the amount of $6,244,811.78 that was deposited in its checking account at Union Bank ending in X4874 ("Account").

14. I am informed and believe and thereon allege, that PurchaseCo 80, LLC ("PurchaseCo") sent this wire as a partial payment for its alleged purchase of the future income from approximately 10,000 client files of LPG.

15. I am informed and believe and thereon allege, that while the Account was designated as an IOLTA account at the bank, the Debtor did not treat the Account as a trust account and comingled its own funds with other deposits in the Account.

16. On or about September 8, 2022, LPG made the Payment to Mr. Bayrooti via Check No. 0216 drawn on the Account.

17. A true and accurate copy of the Check (with redactions of confidential information) is attached as **Exhibit D** to the Complaint.

///

4

18. I am informed and believe and thereon allege, that the Payment, in the amount of $5,814,146.45, was the sum of the $5,130,000.00 owed to Mr. Bayrooti under the Agreement plus another $684,146.45 that was added for payment of late fees and/or interest.

19. In early September 2022 and prior to Payment being made, LPG's financial condition was dire and continuing to deteriorate.

20. I am informed and believe and thereon allege, that LPG had been sued numerous times in New York state court by merchant cash advance lenders and was constantly refinancing or restructuring existing debts to avoid default.

21. I am informed and believe and thereon allege, that the funds for the Payment to Mr. Bayrooti came from LPG promising to pay its future income from approximately 10,000 client files to PurchaseCo in exchange for the amount wired into the Account and other consideration.

22. I am informed and believe and thereon allege, that while LPG told PurchaseCo that the future receivables from these client files were free and clear of liens, claims, and encumbrances, this was false.

23. I am informed and believe and thereon allege, that LPG had already promised to pay a substantial percentage of funds it received from consumer clients to the marketing affiliates that had initially referred those consumers to LPG.

24. I am informed and believe and thereon allege, that while the terms of these fee sharing agreements varied, LPG often promised to pay marketing affiliates between forty and sixty percent of the payments it received on referred matters.

25. I am informed and believe and thereon allege, that prior to the transaction with PurchaseCo and the subsequent Payment, LPG had also previously granted security interests on all its assets to numerous lenders who had perfected these security interests in filings with the California Secretary of State.

26. I am informed and believe and thereon allege, that as a result of these transactions, LPG had already sold or promised to pay more than 100% of its income to multiple parties before it had paid operating expenses.

///

5

27. Furthermore, as alleged by Debt Validation Fund II, LLC and related entities in their Orange County Superior Court[1] suit against LPG, on September 1, 2022 LPG entered into Note Exchange and Restructuring Agreements and Secured Promissory Notes to restructure approximately $70 million dollars in existing debt.

28. According to this complaint, LPG obligated itself to pay Debt Validation Fund II, LLC and related entities more than $110 million dollars upon execution of these restructuring agreements.

29. The claims asserted in the Complaint are not secured by real property.

30. I am informed and believe and thereon allege, that based on the results of a nationwide bank search and brokerage search, Mr. Bayrooti has four (4) checking accounts and two (2) money market accounts held at the U.S. Bank branch located at 24801 Del Prado, Dana Point, CA 92629-2852, as well as a brokerage account held at Charles Schwab, 27201 Puerta Real #100, Mission Viejo, CA 92691-8570 (collectively, the "Accounts").

31. I am concerned that the Accounts are highly liquid assets that may be readily transferred or concealed, thus creating an immediate danger that they will not be available for levy.

32. I respectfully request that the Court immediately issue a Right to Attach Order and Writ of Attachment as to Mr. Bayrooti's interest in the Accounts.

33. I am informed and believe and thereon allege, that until recently, Mr. Bayrooti owned real property commonly known as 23 Costa Del Sol, Dana Point, CA 92629-4039 (the "Property").

34. I am informed and believe and thereon allege, that on or around May 10, 2023, Mr. Bayrooti transferred the Property to his living trust, The Arash Bayrooti Living Trust (the "Living Trust"), as reflected in the Grant Deed recorded on May 15, 2023 as document number 2023000112039 with the Orange County Clerk-Recorder's Office.

/ / /

/ / /

---

[1] Case No. 30-2023-01303355-CU-CO-CXC in the Superior Court for Orange County California.

6

35. I am informed and believe and thereon allege, that Mr. Bayrooti still resides at the Property and retains full control over and benefit of the assets in the Living Trust.

36. I am further informed and allege that the Living Trust is a revocable trust, as Mr. Bayrooti is both the current Trustee of the Living Trust and the current beneficiary of the Living Trust.

37. I am also informed and allege that the Property is presently unencumbered and could have available equity.

38. I am concerned that that the Property will be transferred, sold, encumbered or otherwise made unavailable before this matter can be heard on a noticed motion. If this happens, I will have lost the opportunity to realize the equity in the Property in satisfaction of the judgment I plan to obtain.

39. I respectfully request that the Court immediately issue a Right to Attach Order and Writ of Attachment as to Mr. Bayrooti's interest in the Property.

40. Alternatively, I request that the Court issue a Temporary Protective Order enjoining Mr. Bayrooti from transferring, selling and/or encumbering the Accounts and/or the Property, or otherwise making the Accounts and/or the Property unavailable, until this matter can be heard on a noticed hearing.

41. I am not seeking the attachment for any purpose other than to ensure that Mr. Bayrooti's assets will be available to satisfy, in whole or in part, the judgment I plan to obtain.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this __8__ day of August 2024 at Los Angeles, California.

_____
Richard A. Marshack